UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA           :     06 CRIM. 1013

        -v-                      :     INFORMATION

GARY WOLFF,                        :     06 Cr.

               Defendant.         :

- - - - - - - - - - - - - - - - - -x

*JUDGE LYNCH*

**COUNT ONE**

(False Statements To Auditors)

The United States Attorney charges:

THE RELEVANT PARTIES

    1.   At all times relevant to this Information, Aquacell Technologies, Inc. ("Aquacell"), was a corporation organized under the laws of the State of Delaware with its headquarters in California, and was engaged in the business of manufacturing and distributing water coolers. At all times relevant to this Information, Aquacell's common stock was listed on the American Stock Exchange ("AMEX"), an electronic securities market system, under the symbol "AQA." At all times relevant to this Information, Richard A. Eisner & Company, LLP ("Eisner" or the "auditors"), located in Manhattan, served as Aquacell's independent external auditors.

    2.   At all times relevant to this Information, GARY WOLFF, the defendant, was a certified public accountant who

served as Aquacell's Chief Financial Officer.  WOLFF was the primary point of contact for Aquacell's auditors.

BACKGROUND

3.  In or about December 2000, Aquacell filed a registration statement with the United States Securities and Exchange Commission ("SEC"), pursuant to which Aquacell sought to register its common stock for sale to members of the public in the United States.

4.  On or about February 9, 2001, the SEC declared effective Aquacell's registration statement.  Pursuant to the registration statement, on or about February 12, 2001, Aquacell conducted an initial public offering ("IPO"), through underwriters in New Jersey, among other places, of approximately 1,200,000 shares of Aquacell common stock at an initial offering price of $5.00 per share, raising a total of approximately $6 million.  On or about February 12, 2001, Aquacell's common stock began publicly trading on the AMEX.

5.  Aquacell was required to comply with provisions of the federal securities laws, including the Securities Exchange Act of 1934 and regulations promulgated thereunder, that were designed to ensure that its financial information was accurately recorded and disclosed to the public.

6.  Under these provisions, Aquacell had the duty to, among other things:  (a) make and keep books, records, and

2

accounts that accurately and fairly reflected its business transactions; (b) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that its transactions were recorded as necessary to permit preparation of financial statements in conformity with Generally Accepted Accounting Principles and other applicable criteria; (c) file with the SEC annual financial statements, audited by an independent accountant, that disclosed its balance sheet as of the end of the most recent fiscal year and its statement of income and cash flows for each of the two most recent fiscal years; and (d) file with the SEC quarterly updates of its financial statements that disclosed its financial condition and the results of its business operations for each three-month period.

       7.  On or about February 15, 2001, the management of Aquacell, including GARY WOLFF, the defendant, along with Aquacell's Chief Executive Officer (the "CEO") and Chief Operating Officer (the "COO"), agreed to lend $1,750,000 of the proceeds of the IPO to an investor in the IPO (the "Investor"), so that the Investor could use those IPO funds to purchase 350,000 shares of Aquacell stock, in the IPO, for $1,750,000.

       8.  On or about February 15, 2001, a total of $1,750,000 of IPO proceeds were wired from Aquacell's bank account, by the COO and with the approval of GARY WOLFF, the

defendant, and the CEO, to two accounts in the name of two companies under the direction and control of the Investor (the "Investor's Companies"). The $1,750,000 in IPO proceeds were then wired by the Investor's Companies to the underwriter for the purchase of 350,000 shares of Aquacell stock.

9.  In two promissory notes dated February 16, 2001, and signed by GARY WOLFF, the defendant, and the Investor ("the February 16, 2001 notes"), the Investor's Companies agreed to repay Aquacell a total of $1,750,000, plus interest, due and payable on August 16, 2001. The February 16, 2001 notes claimed to be "collateralized" by "marketable securities," but Aquacell took no steps to perfect Aquacell's interest in any such collateral. Furthermore, the February 16, 2001 notes did not disclose that the amounts lent to the Investor's Companies were for the purpose of enabling the Investor to purchase shares of stock in Aquacell's IPO. In notes dated August 16, 2001 (the "August 16, 2001 notes"), the original February 16, 2001 notes were extended for thirty days under the same terms. In two notes dated September 16, 2001 (the "September 16, 2001 notes"), the August 16, 2001 notes were extended for an additional twelve months, payable in monthly installments.

### THE SCHEME TO MAKE MATERIAL MISSTATEMENTS AND OMISSIONS TO THE AUDITORS

10. Beginning in or about May 2001, Aquacell's auditors began making inquiries to GARY WOLFF, the defendant,

about the February 16, 2001 notes totaling $1,750,000, the Investor, and the Investor's Companies.  At first, WOLFF told the auditors that the loans would be repaid, and that the auditors did not need to ask any additional questions.  The auditors persisted in their questioning, and from in or about May 2001 through and including in or about November 2001, WOLFF made a series of misrepresentations, omissions, and half-truths designed to disguise from the auditors the true nature of the loans to the Investor -- namely, that they were made for the purpose of enabling the Investor to use the proceeds to purchase Aquacell stock in the IPO.  For example:

a.  WOLFF never disclosed to the auditors that the proceeds of the loans were used by the Investor's Companies to purchase stock in the Aquacell IPO.

b.  WOLFF told the auditors that the proceeds were used by the Investor in his mortgage business, when WOLFF knew that the proceeds were actually used to purchase Aquacell stock.

c.  When asked if the Investor had participated in the IPO, WOLFF told the auditors that he had not, but had participated in a prior private placement.

d.  WOLFF told the auditors that the Investor had brought investors to Aquacell's IPO, when in fact, as WOLFF knew, the Investor had not.

5

    e. WOLFF repeatedly told the auditors that he had no reason to believe that the Investor would default on the February 16, 2001 notes, when in fact he knew that the Investor had defaulted on an obligation to pay $1,750,000 for his participation in the IPO, thus necessitating the loan, and never disclosed this fact to the auditors.

    f. On or about October 9, 2001, WOLFF forwarded a financial statement to the auditors of one of the Investor's Companies which WOLFF knew to be inaccurate, in that it failed to disclose that the Investor's company owned substantial amounts of Aquacell stock that it had purchased in the IPO.

STATUTORY CHARGE

    11. From in or about May 2001 to in or about November 2001, in the Southern District of New York and elsewhere, GARY WOLFF, the defendant, being an officer and director of Aquacell, an issuer registered pursuant to section 12 of the Securities Exchange Act of 1934, unlawfully, willfully and knowingly, directly and indirectly, (a) made and caused to be made materially false and misleading statements; and (b) omitted to state, and caused others to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading to accountants in connection with (i) audits, reviews and examinations of the financial statements of Aquacell; and (ii)

6

the preparation and filing of documents and reports required to be filed with the SEC pursuant to rules and regulations promulgated by the SEC.

    (Title 15, United States Code, Sections 78m and 78ff; Title 17, Code of Federal Regulations, Section 240.13b2-2; and Title 18, United States Code, Section 2).

 

*Michael Garcia*
_____
MICHAEL J. GARCIA
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

GARY WOLFF,

Defendant.

**INFORMATION**

06 Cr.

(Title 15, United States Code, Sections 78m and 78ff; Title 17, Code of Federal Regulations, Section 240.13b2-2; and Title 18, United States Code, Section 2)

MICHAEL J. GARCIA
United States Attorney.